IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PATTY PRATT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SCIENCE APPLICATIONS )<br>INTERNATIONAL CORPORATION, )<br>)<br>Defendant. ) | Civil Action No. 1:23-cv-417 (RDA/LRV) |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Science Application International Corporation's ("SAIC" or "Defendant") Motion for Partial Summary Judgment (the "Motion"). Dkt. 42. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 43), Plaintiff Patty Pratt's Opposition (Dkt. 47), and Defendant's Reply (Dkt. 48), this Court GRANTS the Motion for the reasons that follow.

### I.   PROCEDURAL BACKGROUND

On March 29, 2023, Plaintiff filed her Complaint in this action asserting five counts of disability discrimination under the Americans with Disabilities Act ("ADA"). Dkt. 1. On May 12, 2023, Defendant filed its Answer. Dkt. 8. Thereafter, a Scheduling Order was issued, and the case proceeded to discovery. Dkt. 9.

On October 3, 2023, Defendant filed its first motion for summary judgment. Dkt. 26. On September 11, 2024, the Court issued its Memorandum Opinion and Order granting in part and denying in part that motion. Dkt. 41. In analyzing Counts 3 and 4 with respect to the first motion,

the Court recognized that Plaintiff's claims of disability discrimination and retaliation under the Americans with Disabilities Act (the "ADA") based on being forced to take leave related to two separate time periods: (i) a period from May 28, 2021 through June 28 and "early" July; and (ii) a period from July 30, 2021 through the conclusion of Plaintiff's employment. Dkt. 41 at 12. The Court held that the first period was outside of the 300-day lookback period for the ADA and thus time-barred, but that the second period was not. *Id.* The Court noted that Defendant's other argument regarding whether Counts 3 and 4 should be dismissed was only contained within a footnote and that the Fourth Circuit disfavors ruling on dispositive issues based on arguments contained in a footnote. *Id.* Thus, the Court denied the motion on that basis without prejudice and with leave to renew that argument so as to put Plaintiff on notice regarding the importance of the issue and to permit Plaintiff to specifically address it. *Id.* In essence, the Court directed that there be supplemental briefing on that issue, but limited the briefing to the facts determined by the Court in the Memorandum Opinion and Order. *Id.* at 13. The Court otherwise granted the motion. *Id.* at 25-26.

On September 27, 2024, with leave of Court as provided in the Memorandum Opinion and Order, Defendant filed its renewed motion (the pending Motion). Dkt. 42. On October 11, 2024, Plaintiff responded in Opposition. Dkt. 47. On October 18, 2024, Defendant filed its Reply. Dkt. 48.

II. LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex*

2

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. "(A) party opposing summary judgment may not simply rest on the allegations of his complaint, but must instead come forward with specific evidence showing the existence of a genuine issue of fact." *Muhammad v. Giant Food*, 108 F. App'x 757, 764 (4th Cir. 2004) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

### III. ANALYSIS

As the Court previously indicated, the Court relies on only those facts that the Court determined were undisputed in its prior Memorandum Opinion and Order. Dkt. 41. By way of summary of those facts, this case arises out of the COVID-19 pandemic and the response thereto. Plaintiff worked for Defendant as a government contractor on a contract with the National Reconnaissance Office (the "NRO"), and that work required that Plaintiff work in a Sensitive Compartmented Information Facility ("SCIF"). *Id.* at 3-4. Relevant to the remaining claims at issue here, on July 22, 2021, the NRO issued a policy that required "all unvaccinated personnel to wear a mask at all times while on NRO or NRO-occupied property." *Id.* at 6. On July 25, 2021, Plaintiff submitted an accommodation request to not wear a mask (as she was unvaccinated) and, on July 30, 2021, Plaintiff was told that she could either (1) take leave or (2) charge the time to a COVID admin code and later make up that admin time. *Id.* at 7.

In its Motion, Defendant now renews its motion for summary judgment with respect to Count 3, which asserts ADA disability discrimination based on Defendant requiring Plaintiff to take leave, and Count 4, which asserts ADA retaliation based on Defendant requiring Plaintiff to take leave. Plaintiff opposes summary judgment. Defendant's arguments with respect to each Count will be addressed below.

A.   Whether the Motion was Properly Renewed

As an initial matter, this Court must address Plaintiff's argument that the Motion is not well taken because it renews arguments previously made. Dkt. 47 at 2. As judges in this District have long recognized, "[t]his Court has discretion to allow [Defendant] to renew its Motion." *Abella v. Universal Leaf Tobacco Co., Inc.*, 546 F. Supp. 795, 797 (E.D. Va. 1982). Other courts have reached the same conclusion. *See, e.g.*, *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995) ("[T]he denial of summary judgment has no res judicata effect, and the district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist."). Plaintiff cites no authority holding that this is not a matter of discretion. Rather, Plaintiff cites a number of cases where courts have *exercised their discretion* not to consider or invite additional arguments or supplemental briefing—this case law does not stand for the proposition that such renewal is improper or unfair. Dkt. 47 at 2 (citing cases). Indeed, Plaintiff misunderstands the basis for the Court's prior holding. The basis for the Court's decision was not that Defendant had not raised the issue such that it was available for decision, but that Plaintiff was not properly on notice that she had to respond to it and, thus, it was unfair to decide a dispositive issue without the opportunity for full briefing by Plaintiff. Dkt. 41 at 12-13. Accordingly, this is not a basis on which to deny the renewed Motion.

B.   Whether Counts 3 and 4 State a *Prima Facie* Case of Discrimination or Retaliation

The parties do not dispute the elements of Plaintiff's claim with respect to Count 3—namely, to establish disparate treatment under the ADA, "a plaintiff must prove (1) he [or she] has a 'disability,' (2) he [or she] is a 'qualified individual,' and (3) his [or her] employer took an adverse employment action against him [or her] because of his [or her] disability." *Sturgill v. Norfolk S. Ry. Co.*, 391 F. Supp. 3d 598, 603 (E.D. Va. 2019). For Count 4, the elements vary

slightly, in that for a retaliation claim a plaintiff must demonstrate that: (i) the plaintiff engaged in ADA-protected activity; (ii) she later suffered an adverse employment action; and (iii) there is a causal link between the two. *Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 173 n.10 (4th Cir. 2024).

1.  Adverse Employment Action

The Court begins by analyzing whether there was an adverse employment action—a similar element of both claims. As the Fourth Circuit has explained, what qualifies as adverse "differs slightly depending on whether the claim is for unlawful discrimination or retaliation." *Laird v. Fairfax Cnty., Va.*, 978 F.3d 887, 893 (4th Cir. 2020). Particularly, the Fourth Circuit recognizes the following distinctions:

> For a discrimination claim, the plaintiff must show that her employer took an action that adversely affected *employment* or altered the conditions of the *workplace*. But for a retaliation claim, the plaintiff is not so limited since the scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm.

*Id.* (internal citations, quotations, and alterations omitted) (emphasis original).

Recently, the Supreme Court has explained more pointedly on what a plaintiff must show in order to state a discrimination claim. *See Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346 (2024). In *Muldrow*, the Supreme Court agreed that the "significance" of or "materiality" of an adverse employment action is correctly examined when a plaintiff asserts a retaliation claim. *Id.* at 357 ("If an action causes less serious harm, . . . it will not deter Title VII enforcement; and if it will not deter Title VII enforcement, it falls outside the purposes of the ban on retaliation."). With respect to a disparate treatment claim, the Supreme Court held that Title VII "flatly prevents injury to individuals based on status, without distinguishing between significant and less significant harms." *Id.* at 358 (internal quotations, citations, and alterations omitted). Thus, after *Muldrow*,

a plaintiff "need only show some injury respecting her employment terms or conditions," such that the plaintiff is "left worse off," but need not be "significantly so." *Id.* at 359.

Here, as discussed *supra*, the focus is on the period from July 30, 2021, to August 31, 2021. Specifically, the relevant facts are that, following a change in the NRO's policy related to unvaccinated persons, on July 30, 2021, Plaintiff was offered the choice of using an admin code for her time (with the understanding that she would have to make up the work) or going on leave; and thereafter Plaintiff was on leave. Dkt. 41 at 7. Then, on August 31, 2021, Plaintiff ended her employment with Defendant. *Id.* at 10.[1]

### a.   Disparate Treatment Claim

Turning to the disparate treatment claim first, the Court notes that, despite Defendant's Motion clearly delineating between both Count III and Count IV, Plaintiff's Opposition focuses solely on Count IV—the retaliation claim. The Court will, nonetheless, address the disparate treatment claim separately.

Again, in this case, it is worth emphasizing that it was the NRO that ultimately changed the conditions of Plaintiff's employment, because it is undisputed that the NRO would not permit unvaccinated and unmasked persons, like Plaintiff, on its grounds. Dkt. 41 at 6 ("[T]he NRO updated its requirements to require all unvaccinated personnel to wear a mask at all times while on NRO or NRO-occupied property . . . ."). In the wake of that determination by the NRO, Defendant offered Plaintiff a choice between: (i) billing her time to a COVID admin code, and receiving pay (that she would later need to pay back); (ii) using paid time off; or (iii) taking unpaid

---

[1] The Court notes that, at that point, Plaintiff had already been working for Strategic Alliance (a competitor of Defendant) for a few weeks. Dkt. 41 at 10.

leave. Dkt. 41 at 7. Plaintiff then used paid time off until August 23, 2021, when she began taking leave without pay (at which point, Plaintiff was already working for Defendant's competitor). *Id.*

As to her disparate treatment claim, Plaintiff fails to establish an adverse employment action, because, ultimately, an adverse employment action is meant to reflect an intentional decision *by an employer* (not by a third party or the employee), and such a decision is not present here. To begin with, it was the NRO and its policies that precluded Plaintiff from performing the employment activities that she usually performed. Thus, that change cannot be attributed to Defendant. *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998) (holding that employer had not engaged in an adverse employment action where "[i]t made no decisions that affected the terms and conditions of employment at Mini-Circuits" and "was completely uninvolved"); *Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, 915 F. Supp. 2d 498 (S.D.N.Y. 2013) (holding that transfer decision was not an adverse employment action where "decision resulting in Plaintiff's loss of hours on that job was not anticipated at the time of the transfer and was made by the client"); *Kalkey v. Euromodas, Inc.*, 706 F. Supp. 3d 305, 315 (D.P.R. 2023) (recognizing that an employer is only responsible "for their own actions"). Given that the NRO forced a change in Plaintiff's conditions of employment (where Plaintiff could no longer work on NRO grounds), the question then becomes whether Defendant's subsequent actions constitute an adverse employment action. Courts of appeals have recognized that, where plaintiffs make a choice, the resulting action is "not the result of a deliberate decision" by the employer and, thus, not an adverse employment action. *See, e.g., Turley v. SCI of Ala.*, 190 F. App'x 844, 846 (11th Cir. 2006); *Blake v. Potter*, 247 F. App'x 673, 676 (6th Cir. 2007) (holding no adverse employment action where denial of requested shift "resulted in her own choice to take unpaid leave rather than work her assigned shift"). This is not a case where an employee was

7

given a choice of resigning or accepting a transfer, which would be no choice at all, but a case where an employee was given the option of a temporary solution in light of the NRO's change in policy. Accordingly, Plaintiff fails to establish an adverse employment action as to her disparate treatment claim.

Moreover, that this was a temporary situation, in reaction to the NRO's policy change, also independently renders Plaintiff's decision to take unpaid leave[2] not an adverse employment action. Courts have recognized that temporary adjustments in response to unexpected situations do not constitute adverse employment actions. *See Anthony v. Donahoe*, 460 F. App'x 399, 403 (5th Cir. 2012) ("Anthony cannot show that she was subject to an adverse employment action. Her reassignment to the Port Allen facility was temporary and part of a larger emergency plan in the wake of Hurricane Gustav."); *Toy v. City & Cnty. of San Francisco*, 2000 WL 658039, at *1 (9th Cir. 2000) (holding "[t]his temporary loss of duties is not equivalent to the permanent loss of duties . . . and does not amount to an adverse employment action"); *Foresyth v. Wormuth*, 2023 WL 5317958 (4th Cir. Aug. 18, 2023) (holding that "the evidence reflects that the supervisor's temporary changes to Forsyth's work did not tangibly affect the terms, conditions, or benefits of her employment"); *Von Gunten v. Md.*, 243 F.3d 858, 867 (4th Cir. 2001) ("Temporary withdrawal of use of a state vehicle in these circumstances does not constitute an adverse employment action."). Even after *Muldrow*, this long-standing principle remains sound, as a temporary status does not reflect an ultimate decision with respect to "an employment term or condition." *Muldrow*, 601 U.S. at 354. Indeed, courts of appeals and other district judges continue to recognize that such temporary actions are not adverse employment actions. *See, e.g., Paterakos v. City of Chicago*,

---

[2] The Court notes that only a portion of Plaintiff's leave was actually unpaid. *See* Dkt. 41 at 7 (noting that unpaid portion of Plaintiff's leave began on August 23, 2021).

8

147 F.4th 787, 797 (7th Cir. 2025) ("Even under *Muldrow*, though, we agree with the district court that the one-week assignment to the DePaul Center to enable social distancing in the earliest stages of the pandemic did not constitute an adverse employment action."); *Lussier v. City of Cape Coral*, 2024 WL 3673603, at *8 n.10 (M.D. Fla. Aug. 6, 2024) ("While the Eleventh Circuit has not yet applied this standard in the context of adverse employment actions under the ADA, the Court finds that Ms. Lussier's evidence also does not satisfy this lower bar because Ms. Lussier's reassignment was temporary and her regular position to work as manager of Pop's Café was not available because it was being remodeled."). Thus, for this reason as well, Plaintiff's temporary leave status (here, for a matter of weeks) does not constitute an adverse employment action for purposes of her disability discrimination claim.³

b.   Retaliation Claim

For all of the reasons set forth above, Plaintiff also fails to set forth a retaliation claim. The definition of an adverse employment action with respect to retaliation, as recognized by *Muldrow*, is stricter than the definition with respect to disparate treatment because it contains a materiality requirement. *See* 601 U.S. at 357. Because Plaintiff fails to meet the lower disparate treatment standard, it follows that Plaintiff's allegations do not meet the higher retaliation standard. Indeed,

---

³ *See Shepard v. United Parcel Serv., Inc.*, 470 F. App'x 726, 732 (11th Cir. 2012) (holding that an employer's "decision to place [an employee] on medical leave of absence . . . was a reasonable response to his medical restrictions and not an adverse employment action"); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 322 (5th Cir. 2009) (holding that placement on paid administrative leave for three weeks was not an adverse employment action); *Lincoln v. Maketa*, 880 F.3d 533, 542 (10th Cir. 2018) ("[W]e do not regard placement on paid administrative leave as a clearly established adverse employment action."); *May v. Delta Air Lines*, 2022 WL 2835123, at *7 (D. Minn. July 20, 2022) (holding that "a brief period of unpaid leave pending further accommodation is not an adverse employment action"); *Anderson v. Sch. Bd. of Gloucester Cnty., Virginia*, 2020 WL 2832475, at *17 (E.D. Va. May 29, 2020) ("Dr. Anderson's claim of disparate treatment founders because she does not allege a change in employment status . . . significantly different responsibilities, or a decision causing a significant change in benefits.").

9

because the temporary leave status was an interim accommodation, permitting Plaintiff's retaliation claim to proceed would run the risk of allowing the ADA's antiretaliation provisions to swallow the separate mandate that an employer provide reasonable accommodations, because it would permit any alleged unreasonable accommodation to become a retaliation claim.

\* \* \*

In sum, because Plaintiff has failed to establish that she suffered an adverse employment action, no reasonable jury could find in her favor, and summary judgment in favor of Defendant on Counts 3 and 4 is appropriate.

### 2. Qualified Individual

The Court intimated in its original Memorandum Opinion and Order that Plaintiff may not be a qualified individual with a disability. Dkt. 41 at 18 nn.15-16. Plaintiff has now affirmatively argued that she was a qualified individual because she could perform all of the essential functions of her job. *See* Dkt. 47 at 7 (arguing that "[w]earing a face mask was not a specified job requirement" and that "Pratt could perform her essential job functions"). As the Supreme Court has explained, "an ADA plaintiff bears the burden of proving that she is a qualified individual with a disability—that is, a person who, with or without reasonable accommodations, can perform the essential functions of her job." *Stanley v. City of Sanford*, 145 S. Ct. 2058, 2065 (2025). The term "essential functions" refers to the "fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n).

Here, the relevant undisputed facts, as previously found by the Court, are that: (i) Plaintiff was hired to work with the NRO at an NRO facility; (ii) her work involved classified information; (iii) the classified aspects of her work required the use of a classified NRO computer, at the NRO site, in a SCIF; (iv) on July 22, 2021, the *NRO* mandated that persons who were not vaccinated

were required to wear a mask at all times while on NRO or NRO-occupied property; (v) Plaintiff was unvaccinated; and (vi) Plaintiff asserts that she could not wear a mask. Dkt. 41 at 3-6. These facts establish that Plaintiff was not a qualified individual with a disability because one of the essential functions of Plaintiff's job was to work with classified information at the NRO site and Plaintiff was not permitted on the NRO grounds without masking. District judges within this Circuit recognize that plaintiffs are not qualified individuals with a disability where the job requires in-person work and the plaintiff cannot return to in-person work. *See Jordan v. Sch. Bd. of the City Norfolk*, 2023 WL 5807844, at *11 (E.D. Va. Sept. 7, 2023) ("Because Jordan was unable to perform the essential functions of her job fully remotely, she was not a 'qualified individual with a disability,' and NPS was not required to grant her request for fully remote work."). Importantly, as discussed *supra*, Defendant is not the NRO, yet Plaintiff's job for Defendant requires her to work on the NRO grounds. In much the same way, Plaintiff would not be a qualified individual if Plaintiff had a mental health disability which prevented her from obtaining a TS/SCI security clearance from the NRO. Thus, Plaintiff is not qualified because the NRO would not permit her on its grounds, and summary judgment in favor of Defendant on Counts 3 and 4 is appropriate for this additional reason.

On this point, Plaintiff argues that it was not an essential function of her job to wear a mask. Dkt. 47 at 7. The Court agrees, but that is not the correct framing of the issue here. As the Court has explained, the essential function that Plaintiff could not fulfill was accessing the NRO grounds, including the SCIF, in order to work with classified information. Plaintiff does not dispute that her job involved classified information, nor does she dispute that the NRO policy precluded her from accessing the NRO grounds and such classified information. Accordingly, because there are no genuine issues of material fact as to whether Plaintiff was a qualified individual with a

11

disability, summary judgment in favor of Defendant on Counts 3 and 4 will be granted on this basis as well.

### 3.  Pretext

Even if Plaintiff can establish her *prima facie* case of disability discrimination or retaliation, Defendant has put forth a legitimate, non-discriminatory basis for its decision and Plaintiff fails to establish pretext. That is, Defendant asserts that it placed Plaintiff on leave because Plaintiff was unable to access the NRO worksite and while Defendant was attempting to obtain a reasonable accommodation for Plaintiff. Dkt. 41 at 6-9 (describing the implementation of the NRO's policy, the request for an accommodation to the NRO, the NRO's denial, Defendant's attempts to identify another accommodation, and Defendant's efforts to seek telework approval); *see also* Dkt. 43 at 4, 6-7.[4] Because Plaintiff has failed to show that there are genuine disputes of material fact as to her ultimate burden regarding her discrimination and retaliation claims or regarding pretext, summary judgment will also be granted on this basis on Counts 3 and 4.

An employer's burden is only to "articulate" a legitimate, nondiscriminatory reason and is a burden of production. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). A plaintiff may then produce evidence that the employer's justification is "unworthy of credence" or that there is other circumstantial evidence sufficiently probative of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 147 (2000). As the Fourth Circuit has instructed, "the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of discrimination." *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244,

---

[4] Although Defendant's brief specifically argues pretext, Plaintiff does not address the issue in her Opposition.

12

255 (4th Cir. 2025) (internal citations and quotations omitted). Here, Defendant has asserted a legitimate, non-discriminatory reason for its decision (namely, NRO's policies), and Plaintiff has not raised any issues of fact which undermine the validity of Defendant's asserted reason. It is undisputed that it was *NRO* who created the policy leading to Plaintiff being unable to access the NRO grounds and it was *NRO* who denied Plaintiff's requests for certain accommodations. Dkt. 41 at 7-8. Moreover, it is undisputed that, while Plaintiff was on leave (and, unbeknownst to Defendant, working for a competitor), Defendant sought approval from NRO for Plaintiff to telework and searched for other job opportunities for Plaintiff within the company. Dkt. 41 at 9. In short, Plaintiff has not offered evidence that Defendant's proffered reason was pretextual and, therefore, summary judgment in favor of Defendant is also appropriate on this basis.

V.   CONCLUSION

For the reasons stated above, it is hereby ORDERED that the Motion for Partial Summary Judgment (Dkt. 42) is GRANTED; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to enter Rule 58 judgment in favor of Defendant and against Plaintiff and close this civil case.

It is SO ORDERED.

Alexandria, Virginia
September 24 2025

/s/
Rossie D. Alston, Jr.
United States District Judge